## Greggerson's Estate.

Argued March 24, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Carroll Caruthers,* with him *Frank A. Rugh,* for appellant.

*H. E. Marker,* of *Marker & Rial,* with him *Robert W. Pratt,* for appellee.

OPINION BY MR. JUSTICE STERN, April 13, 1942:

A claim against decedent's estate was presented at the audit of the executrix's account by Isabel C. Greggerson, divorced wife of decedent. It was based on a loan of $3,000 made by claimant to decedent on August 15, 1931, evidenced by his note to her in that amount. Claimant did not produce the note at the audit. Payments on account aggregating $500, made at various times in 1934, 1935 and 1936, were admitted, leaving a balance due of $2,500. The residuary legatee (who is also the executrix) appeals from the allowance of the claim.

Claimant produced five witnesses. One of them, Mrs. Edith Condon, a nurse in decedent's household, testified that she was present when the loan was discussed between the parties; she saw the check for $3,000 which decedent received and which he deposited in his bank account; on his behalf, in the summer of 1931, she mailed to claimant a promissory note in that amount payable on

demand; some time later he asked her, in the event of anything happening to him, to see that claimant received the money due on this loan. Frank S. Greggerson, a son of decedent by another marriage, testified that decedent, in the winter of 1933, showed him the note which had been given to claimant, with the remark that he had not paid it but had "swiped" it, that he intended to pay her but did not want her to present the note at that time because of financial conditions, "so he took the note and was going to hold it to compel Isabel to come to him rather than him to go to Isabel"; he showed the note to the witness who "looked at it very closely" and saw that "it was a judgment note in the amount of $3,000, at three years after date I promise to pay to Isabel Greggerson the sum of $3,000." This witness further testified that decedent, in the spring of 1934, told him he was paying claimant $100 on the note, and again, in the fall of 1936, that he had paid her another $200 the previous winter and still owed her a balance of $2,500. Margaret M. Greggerson, wife of Frank S. Greggerson, testified that she was present in 1934 when decedent gave to claimant $100 as part payment on the judgment note; in the spring of 1936 he showed her a letter from claimant acknowledging another payment of $200 on account. Mrs. William Spieth, a cousin of claimant, testified that she saw the note in the fall of 1931; claimant showed it to her, and it was for $3,000 payable within three years. William C. Jones, likewise a cousin of claimant, stated that he also saw the note in the fall of 1931.

Appellant testified that she looked through decedent's papers but "found nothing where he owed."

From the evidence thus presented the court was warranted in finding, as it did, that the loan of $3,000 was made, that the note which evidenced it was executed and delivered, that the production of the note by claimant was excused because of its having been taken by decedent, and that parol evidence of its contents was admissible. It is true that to recover on a lost instrument

a claimant "is required to prove its former existence, execution, delivery, contents, that he is the owner thereof at the time of trial, and that the instrument is lost. . . . The evidence to sustain the averments must be clear and convincing": *Mahoney v. Collman,* 293 Pa. 478, 482, 143 A. 186, 187. Ordinarily, too, "The search [for an allegedly lost instrument] must be bona fide, diligent and thorough, and in the places where the paper is likely to be found": *Laubach v. Meyers,* 147 Pa. 447, 455, 23 A. 765, 766. But "Proof of the loss so fully as to exclude every hypothesis of the existence of the original is not required. It is not necessary to prove exhaustively that the paper nowhere exists": *Ray's Estate,* 304 Pa. 421, 432, 156 A. 64, 68. And where the auditing or trial judge is satisfied that a paper was not produced only because it could not be found after proper search, the appellate court will, as a general rule, accept this as an established fact: *Gorgas v. Hertz,* 150 Pa. 538, 540, 24 A. 756; *Wilson v. Reiszner,* 275 Pa. 5, 10, 118 A. 557, 559; *Ray's Estate,* 304 Pa. 421, 432, 433, 156 A. 64, 68. Here, there being proof of an admission by decedent that he had "swiped" the note, any search by claimant would obviously have been futile and therefore unnecessary: *Abercrombie v. Bailey,* 326 Pa. 65, 68, 190 A. 725, 726.

The execution and delivery of the note being proved, and that it had passed surreptitiously into the possession of decedent, it was proper to admit the testimony of witnesses who had seen and read it; it was sufficient for such witnesses to give their best recollection of its contents and they were not required to state its precise language: *Daly's Estate,* 55 Pa. Superior Ct. 488, 490; *Estate of George H. Lepper, Deceased,* 106 Pa. Superior Ct. 123, 128, 161 A. 569, 570. The evidence thus introduced established all the important terms of the note, the only discrepancy in the testimony being that Mrs. Condon thought it was payable on demand, whereas the others stated it was payable three years after date; the weight of the testimony supported the latter version.

Appellant placed in evidence a check of $800 signed by decedent payable to the order of claimant and marked "For repayment of loan in full." This check was dated April 10, 1933, but the auditing judge found as a fact that it related to another loan, basing this conclusion upon testimony of admissions of decedent made after the date of the check that he still owed claimant on the $3,000 note, and also upon the fact that he actually made payments to claimant thereafter.

Recovery either on the loan or on the note representing it is not barred by the Statute of Limitations. The auditing judge found that the note was under seal; in any event, the claim was presented within six years of the due date. Payments on account of the debt, one made as late as 1936, effectually tolled the statute; such payments were definitely established by the testimony of claimant's witnesses.

There is a suggestion that claimant should be required to indemnify the estate against possible claims of others on the lost note, but, in view of the testimony that the note was in the possession of decedent himself, the estate has no need or right to demand indemnity. Moreover, since no such other claims were presented at the audit, the distribution of the entire assets of the estate as ordered by the court will not be subject to future challenge: Act of June 7, 1917, P. L. 447, sec. 49 (d).

In allowing Mrs. Greggerson's claim in the sum of $4,324 the court apparently computed interest from August 15, 1931, instead of from the due date of the note, August 15, 1934. This error should be corrected. Also, as there were payments on account at various times, the interest should be calculated only on the unpaid balances.

The record is remitted to the court below with instructions to amend the decree as herein indicated in respect to the allowance of interest; otherwise the decree is affirmed, costs to be paid by the estate.