Strong, Admrx., *v.* City National Bank of
Philadelphia, Appellant.

Argued November 29, 1946. Before MAXEY, C. J.,
DREW, LINN, STERN, PATTERSON, STEARNE and JONES,
JJ.

*Joseph W. Henderson,* with him *George M. Brodhead*
and *Rawle & Henderson,* for appellant.

*Henry A. Craig,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 6, 1947:

This appeal is an aftermath of *Bacher, Administratrix, v. City National Bank of Philadelphia*, 347 Pa. 80, 31 A.2d 725.

Briefly to rehearse the facts in the case—one Clara Bacher was the administratrix of the Estate of Anna Hoffman, deceased, in which capacity she employed William J. Ballen, a member of the bar, as her lawyer. She executed a written power of attorney authorizing and directing him "to collect any and all moneys due the said estate, and to endorse any and all checks payable to me as administratrix of the said estate, and to deposit the funds so collected in his attorney's account." A building and loan association which was indebted to the estate gave two checks in payment, each payable to the order of "Estate of Anna Hoffman". Ballen took these checks, indorsed them

"ESTATE OF ANNA HOFFMAN
WILLIAM J. BALLEN
ATTORNEY"

and, without the knowledge of his client, deposited them in his personal account with defendant bank. The proceeds were paid out on Ballen's personal checks, and the estate, which has never received any of the money, brought suit against the bank. On the former appeal to this court we held that the case was governed by section 9 of the Uniform Fiduciaries Act of 1923, P. L. 468, which provides that "If a fiduciary [defined in section 1 as including an "agent"] makes a deposit in a bank to his personal credit of checks . . . payable to his principal and indorsed by him, if he is empowered to indorse such checks; . . . the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary, and the bank is authorized to pay the amount of

the deposit, or any part thereof, upon the personal check of the fiduciary, without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith." But since it did not appear whether or not the bank, at or before the time it received the deposits or made payments thereout on Ballen's personal checks, had actual knowledge of the fact that he was authorized to deposit the checks only in his attorney's account the record was remanded in order that that question might be determined.

The court below, sitting without a jury, found that at the times when the two checks were deposited and when the proceeds were withdrawn the bank had no knowledge whatever of the power of attorney or of any of its provisions and first learned of the existence of that document only after the institution of the present suit. Instead, however, of entering judgment for the bank, as such a finding required, the court entered judgment for plaintiff for the amount of the checks and interest. It did this on the theory that while the bank had no knowledge concerning the direction to Ballen to deposit the proceeds of the checks in his attorney's account it also had no knowledge of the authority given him to indorse the checks, and therefore, in the opinion of the court, the bank did not come within the protection of the Uniform Fiduciaries Act.

This view of the situation was erroneous. The bank, as provided in section 9 of the Act, was authorized to pay the amount of the deposits on Ballen's personal checks unless it had actual knowledge of the limitations of his authority in that regard, but its knowledge or lack of knowledge as to his right to indorse the checks was

wholly immaterial. The condition prescribed by the Act as necessary to relieve the bank from liability is that the fiduciary must *in fact* have been empowered to indorse the checks, not that the bank must have known that he had such authority. As stated in our former opinion: "When it accepted the deposit to Ballen's personal credit the only risk it took . . . was that Ballen might not have been authorized to indorse the checks; if no such authorization had existed, the bank clearly would have been liable for paying out funds on the basis of an unauthorized indorsement of the payee's name. But Ballen did have the power to indorse, and if the bank did not actually know that he had been directed to deposit the checks in his attorney's account it would not be liable because of his violation of this instruction and his misappropriation of the funds after receiving them upon his authorized indorsement; . . ." Ballen's power to indorse depended on his possession of such authority and not on the bank's knowledge as to whether or not it existed: *Relf v. Bank of Mobile,* 20 Pa. 435, 439; *Indiana Flooring Co. v. District National Bank of Washington,* 280 Fed. 522, 524, 525. Since he actually had the authority to indorse, the bank, by the express wording of the Act, was permitted to pay the amount of the deposits on his personal checks unless it had knowledge—which the court below found it did not have—of the provision in the power of attorney designating the account in which the checks should be deposited.

Plaintiff, substituted administratrix of the Anna Hoffman Estate, urges that it was the duty of the bank to produce at the trial each and every one of its tellers in order to show that none of them knew of the existence of the power of attorney. Defendant did produce its president, who had made a thorough investigation of the matter, and his testimony, together with that of the cashier, was sufficient to satisfy the court in regard to the factual issue; if plaintiff had desired to explore the

question further she could have subpœnæd and examined any or all of the other bank officials and employes. Nor is there merit in her contention that defendant's general practice in regard to the precautions it adopted to prevent fiduciaries from improperly depositing checks in their personal accounts was extremely loose and reprehensible. Even if such criticism were justified it would prove nothing more than negligence—not the "bad faith" required by the statute in order to impose liability upon the bank.

Judgment reversed and here entered for defendant.

MR. JUSTICE DREW and MR. JUSTICE ALLEN M. STEARNE:

For the reasons expressed in our separate dissenting opinions when this case was formerly here, 347 Pa. 80, 31 A.2d 725, we feel impelled to now reiterate what was then said.

MR. JUSTICE JONES shares the view of this matter as heretofore expressed in the separate dissents of MR. JUSTICE DREW and MR. JUSTICE ALLEN M. STEARNE but accedes to the court's former decision as now determinative of the "law of the case".